UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
ESTEBAN CAZAHUATL TORRES,

                      Petitioner,

              -against-

THOMAS DECKER, in his official capacity as
New York City Field Office Director for U.S.
Immigration and Customs Enforcement; CARL
DUBOIS, in his official capacity as Director, Orange
County Correctional Center; KIRSTJEN M.
NIELSEN, in her official capacity as Secretary of
the U.S. Department of Homeland Security;
MATTHEW WHITAKER, in his official capacity as
Acting Attorney General of the United States,

                      Respondents.
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/19/2018

18-CV-10026 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

        On October 30, 2018, Petitioner Esteban Cazahuatl Torres filed this petition for a writ of habeas corpus against Respondents Thomas Decker, Director of U.S. Immigration and Customs Enforcement's New York City Field Office; Carl Dubois, director of the Orange County Correctional Center in Goshen, New York, where Petitioner is detained; Kirstjen Nielsen, Secretary of the U.S. Department of Homeland Security; and Matthew Whitaker, Acting Attorney General of the United States[1] (collectively "the Government"). *See* Dkt. 1 (Pet.). Respondents have detained Petitioner since February 13, 2018 under 8 U.S.C. § 1226(a), pending

---

[1]     Petitioner originally named Jefferson B. Sessions III as a respondent in his official capacity as Attorney General; under Fed. R. Civ. P. 15(d), the Court substitutes Acting Attorney General Whitaker for Sessions because the latter has resigned. In a lawsuit against the United States, the State of Maryland has challenged the lawfulness of Mr. Whitaker's appointment as Acting Attorney General. *See* Pl.'s Mot. for Preliminary Inj. and to Substitute Defendant, *Maryland v. United States*, 18-CV-2849-ELH (D. Md. filed Nov. 13, 2018). Because the identity of the Attorney General is not relevant to the disposition of this action, the Court will substitute Mr. Whitaker for Mr. Sessions, but does so without expressing any opinion on whether the appointment was lawful.

resolution of removal proceedings against him. *See* Dkt. 1 (Pet.) ¶ 2-3. Petitioner asserts that the bond hearing he received shortly after his arrest violated the Fifth Amendment Due Process Clause, Section 1226(a) itself, and the Administrative Procedures Act (5 U.S.C. § 706(2)) because the Immigration Judge ("IJ") put the burden on Petitioner to establish that he is not a danger or flight risk and is therefore entitled to release on bond. *Id.* ¶¶ 43-84. Petitioner seeks an order directing his immediate release or, alternatively, directing the Government "to immediately provide Petitioner with a constitutionally adequate, individualized hearing before an impartial adjudicator at which Respondents bear the burden of establishing by clear and convincing evidence that continued detention is justified." *Id.* at 30. In addition to opposing Petitioner's arguments on the merits, the Government contends (among other things) that this petition must be dismissed or, at the very least, stayed until the Board of Immigration Appeals ("BIA") resolves Petitioner's pending appeal of the Immigration Judge's adverse bond determination. *See* Dkt. 11 (Mem. in Opp. to Pet.) at 6-12. For the following reasons, the Court agrees with the Government that this petition is premature and STAYS this matter pending the BIA's disposition of Petitioner's bond appeal.[2]

## JURISDICTION

As a threshold matter, neither 8 U.S.C. § 1252(b)(9) nor 8 U.S.C. § 1226(e) deprives this Court of jurisdiction over this petition. *See, e.g.*, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction . . . ."). The former provision—which cabins "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States"

---

[2] The Court assumes the parties' familiarity with the facts, history, and procedural posture of the case and does not relate them here.

to "judicial review of a final order" of removal—does not deprive the Court of jurisdiction because Petitioner is "not asking for review of an order of removal," is "not challenging the decision to detain [him] in the first place or to seek removal," and is "not even challenging any part of the process by which [his] removability will be determined." *Jennings v. Rodriguez*, 138 S. Ct. 830, 839-41 (2018). And the latter provision—which provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the . . . denial of bond or parole"—does not strip the Court of jurisdiction either: Petitioner does not challenge the IJ's weighing of the evidence presented at his bond hearing or the IJ's discretionary decision to deny bond but rather asserts that the procedures for that bond hearing were constitutionally and statutorily infirm. *See, e.g.*, *Bogle v. DuBois*, 236 F. Supp. 3d 820, 822 (S.D.N.Y. 2017) ("Claims of constitutional infirmity in the procedures followed at a bond hearing are not precluded by § 1226(e)."); *Gordon v. Shanahan*, No. 15-CV-261, 2015 WL 1176706, at *2 (S.D.N.Y. Mar. 13, 2015) ("Although 8 U.S.C. § 1226(e) bars judicial review of certain discretionary judgments, that section does not deprive the Court of jurisdiction over [petitioner's] constitutional and statutory challenges to his detention." (internal quotation marks and alteration omitted)); *cf. Jennings*, 138 S. Ct. at 841 ("Because the extent of the Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or 'decision,' respondents' challenge to 'the statutory framework that permits [their] detention without bail' . . . falls outside of the scope of § 1226(e)." (brackets in original)). The Government agrees. *See* Dkt. 11 (Mem. in Opp. to Pet.) at 12 n.2 ("The government does not suggest that Section 1226(e) bars the Court from reaching the principle issue in this case: which party should bear the burden at bond hearings held under 8 U.S.C. §1226(a)."). The Court will therefore proceed to address administrative exhaustion.

## DISCUSSION

When an Immigration Judge denies a detained non-citizen release on bond, the non-citizen may appeal that decision to the BIA. *See* 8 C.F.R. § 1236.1(d)(3) ("An appeal relating to bond and custody determinations may be filed to the Board of Immigration Appeals . . . ."); *see also id.* §§ 1003.1(b)(7), 1003.19(f); *id.* § 1003.38(a). Although there is no statutory requirement that a detained non-citizen exhaust all administrative avenues of relief before challenging the lawfulness of his immigration detention in federal court, courts routinely require such exhaustion as a prudential matter. *See Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014) ("Since Congress is silent on the issue, courts have applied a judicially created requirement that, generally, a petitioner must exhaust his administrative remedies before seeking federal court intervention."); *see generally Howell v. I.N.S.*, 72 F.3d 288, 291 (2d Cir. 1995) ("Under the doctrine of exhaustion of administrative remedies, a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." (internal quotation marks omitted)). And many courts in this district have stayed habeas petitions, like this one, where the petitioner's appeal of an adverse bond determination is pending before the BIA. *See Nativi v. Shanahan*, No. 16-CV-8496, 2017 WL 281751, at *2 (S.D.N.Y. Jan. 23, 2017) (collecting cases); *see also, e.g.*, *Dembele v. Decker*, No. 18-CV-5070, 2018 WL 4960234, at *2-3 (S.D.N.Y. Oct. 9, 2018); *Gaitan v. Decker*, No. 17-CV-5690, 2018 WL 740996, at *3-4 (S.D.N.Y. Feb. 7, 2018).

Petitioner concedes that the prudential exhaustion requirement applies to his petition and that, because his appeal of the IJ's bond determination remains pending before the BIA, he has not exhausted all administrative remedies available to him. Dkt. 4 (Mem. in Supp. of Pet.) at 3. He contends, however, that he satisfies "all of the well-established exceptions to the prudential exhaustion doctrine as outlined by the Second Circuit." *Id.* A detained non-citizen's failure to

exhaust administrative remedies may be excused where "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; [or] (4) in certain instances a plaintiff has raised a substantial constitutional question." *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (internal quotation marks omitted). Contrary to Petitioner's argument, however, none of these factors favors excusing exhaustion here.

As to the first factor, Petitioner contends that "the BIA cannot provide a 'genuine opportunity for adequate relief'" because "it is the cause of the improper burden allocation that [he] challenges." Dkt. 4 (Mem. in Supp. of Pet) at 8. Petitioner is correct that the BIA itself promulgated and has recently reaffirmed its commitment to the burden-allocation regime he attacks as unconstitutional and contrary to statute. *See Matter of Siniauskas*, 27 I. & N. Dec. 207, 207-08 (BIA 2018) ("An alien in a custody determination under . . . 8 U.S.C. § 1226(a) (2012)[] must establish to the satisfaction of the Immigration Judge and the Board that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight."). He may also be correct that the Board will be loath to change its position on this question for the foreseeable future. That is not a foregone conclusion, however, in light of the number of recent district court decisions holding that position to be unlawful. *See Martinez v. Decker*, No. 18-CV-6527, 2018 WL 5023946, at *2-5 (S.D.N.Y. Oct. 17, 2018); *see also, e.g.*, *Dukaray v. Decker*, No. 18-CV-2898, 2018 WL 5292130, at *5 (S.D.N.Y. Oct. 25, 2018); *Joseph v. Decker*, No. 18-CV-2640, 2018 WL 6075067, at *12-13 (S.D.N.Y. Nov. 21, 2018). In any event, Petitioner's pending appeal to the Board asserts that the IJ "erroneously deemed [him] a danger to the community" based on a misinterpretation of the evidence or a misapplication of the BIA's framework for assessing dangerousness. *See* Dkt. 1 (Pet.) ex. C (Notice of Bond Appeal to BIA) at 16. Regardless of who has the burden of proof, if the BIA is

persuaded by that argument, then it could grant Petitioner release on bond—thereby mooting the constitutional and statutory challenges Petitioner raises here. *See Michalski v. Decker*, 279 F. Supp. 3d 487, 496 (S.D.N.Y. 2018) ("And even if the immigration judge denies bond, [the] petition could be mooted if the Board of Immigration Appeals reverses that determination."); *Cepeda v. Shanahan*, No. 15-CV-09446, 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2016) ("The BIA may find that the evidence proffered at [petitioner's] bond hearing did not sufficiently establish his danger to the public, rendering [his] claim in this Court moot."). Petitioner's administrative appeal, therefore, provides a "genuine opportunity for adequate relief," *Beharry*, 329 F.3d at 62 (citation omitted), that would render unnecessary "a new [bond] hearing for [Petitioner] that meets the standards demanded in his petition," Dkt. 12 (Reply in Supp. of Pet.) at 3.

This logic also disposes of Petitioner's similar argument on the third *Beharry* factor: although Petitioner cannot raise his constitutional argument before the BIA, *see, e.g.*, *Severino v. Mukasey*, 549 F.3d 79, 83 (2d Cir. 2008), and even if the Board's precedents foreclose his statutory arguments, it is nonetheless possible that Petitioner will get the relief he really wants—release on bond pending resolution of his removal proceedings—if his administrative appeal is successful. Even if Petitioner believes that his arguments on administrative appeal are unlikely to persuade the BIA to reverse the IJ's custody determination, that is not enough to establish futility. *See Beharry*, 329 F.3d at 62 ("That [petitioner's] argument would likely have failed [before the BIA] is not tantamount to stating that it would have been futile to raise it . . . .").[3]

---

[3] As noted above, Petitioner may or may not be right that "the BIA has definitively spoken regarding burden allocation and the entire record has been compiled," making it unlikely BIA will rethink its allocation of the burden of proof. Dkt. 12 (Reply in Supp. of Pet.) at 3-4. But regardless, that argument is a red herring: exhaustion makes sense *not* because this Court would benefit from the BIA's views on Petitioner's constitutional and statutory arguments but because a decision favorable to Petitioner on other grounds would moot this petition altogether.

Regarding the second factor, Petitioner asserts that he and his family have and will suffer irreparable harm from his prolonged and (in his view) unlawful detention. On a clean slate, the Court would tend to agree with Petitioner. Much authority, however, forecloses his argument. *See, e.g.*, *Michalski*, 279 F. Supp. 3d at 496 ("[Petitioner's] claim that prolonged detention constitutes an irreparable injury that may excuse exhaustion has been rejected by courts in this District."); *Nativi*, 2017 WL 281751, at *2 ("However, the harm [Petitioner] identifies—continued detention—is insufficient to qualify as irreparable injury justifying non-exhaustion."); *Giwah v. McElroy*, No. 97-CV-2524, 1997 WL 782078, at *4 (S.D.N.Y. Dec. 19, 1997) ("If incarceration alone were the irreparable injury complained of, then the exception would swallow the rule that the INS administrative remedies must be exhausted before resorting to the federal courts.").[4]

Finally, Petitioner asserts that exhaustion should be excused because his petition "raises a substantial constitutional question." Dkt. 4 (Mem. in Supp. of Pet) at 3; *see also* Dkt. 1 (Pet.)

---

This point distinguishes Petitioner's case from *Joseph*, 2018 WL 6075067, at *5-7. In that case, the petitioner did not appeal the IJ's adverse bond determination to the BIA at all and, it appears, had no viable arguments against his detention except statutory and constitutional ones that would be have been futile to raise before the BIA. *Id.* That is not the case here: Petitioner himself has marshaled at least one nonconstitutional, nonstatutory argument before the BIA that the BIA is empowered to resolve. And if that argument persuades the BIA that the IJ's custody determination was erroneous, the Board may order Petitioner released on bond—rendering any intervention by this Court unnecessary.

[4]    Contrary to Petitioner's suggestion, *see* Dkt. 1 (Pet.) ¶ 19, the fact that it may take several months for the BIA to process Petitioner's bond appeal is not enough to establish irreparable harm or excuse exhaustion. Virtually every non-citizen faces a delay in exhausting administrative remedies before the Board, yet Courts in this district and across the country routinely hold them to the exhaustion requirement nonetheless. To borrow another Court's phrasing, if a several-month delay at the BIA was itself sufficient to excuse exhaustion, "then the exception would swallow the rule that the [Board's] administrative remedies must be exhausted before resorting to the federal courts," *Giwah*, 1997 WL 782078, at *4. And Petitioner offers no reason to believe that the BIA's processing of his appeal will be atypically long or indefinite.

That said, it is disturbing that, as of December 11, 2018, the BIA had not even set a briefing schedule on Petitioner's appeal, perhaps partially because the IJ had not yet issued a written order memorializing his decision to deny bond. Dkt. 12 (Reply in Supp. of Pet.) at 16. If the appeal process were to be unduly prolonged, that might be a basis for Petitioner to seek to lift the stay, especially given that Petitioner has been detained for almost a full calendar year already.

¶ 21. The Court agrees that Petitioner presents serious constitutional and statutory challenges to his detention that may very well entitle him to habeas relief. But that circumstance does not entitle Petitioner to a waiver of the exhaustion requirement. One purpose of the exhaustion requirement is to facilitate administrative resolution of issues that might "render judicial review unnecessary." *Beharry*, 329 F.3d at 62. As Petitioner has seen fit to pursue such an administrative resolution, this Court is not persuaded that this is one of those "certain instances" in which the gravity of a habeas petition's content warrants excusing the exhaustion of administrative remedies. *Id.*

## CONCLUSION

For the foregoing reasons, the Court STAYS this case until the BIA disposes of Petitioner's pending bond appeal. *See, e.g.*, *Cepeda*, 2016 WL 3144394, at *2 n.3. Within ten days of that disposition, the parties must file letters with the Court informing it of the BIA's decision. Should that decision not moot this petition, the parties must also indicate whether they wish to amend their briefs to account for new facts or authorities or, in the alternative, submit the petition for decision on the briefs already filed.

**SO ORDERED.**

Date: **December 19, 2018**  **VALERIE CAPRONI**
      **New York, New York**   **United States District Judge**